Not for the judge, not for the BIA. It's a finding of fact. Thank you, Your Honor. Thank you, counsel. We'll argue to take it under advisement. We'll call our next case, A. Yang Chen v. Attorney General. Good morning, Judge. Good morning. Good morning. I'm Norman Wong, and I represent the petitioner of Chen. I'm the IP of the courts. Do you wish to rebuttal? I wish to reserve two minutes. Two minutes? Yes, yes. In this case, I want to emphasize first that whether either under the novel standard review or clear anonymous review, the board is wrong in this decision, in this case. And also, I don't see why... The I.J. credited the aired affidavit. The I.J. credited that affidavit. But this is not what the I.J. relied upon in his decision. He credited it a little bit. Well, he referenced it and relied upon it. Now, there was an intervening decision where the BIA, in another case, had said it's outdated, et cetera. Was the BIA not entitled to then say that it really wasn't worthy of credence? The BIA is entitled to say that. But if the BIA is entitled to say that, the BIA should also comment or credit the other facts in the just decision. So it just picked a couple of facts. The BIA just cannot arbitrarily pick and choose certain facts and use it for its own determination of the outcome. Including facts that weren't before the I.J., the 2005 profile. That's correct. And also, the Kaplan case should be fully applicable in this situation, Judge. I cannot see how the court would distinguish the clear probability of torture and the reasonable possibility for well-found fear of future persecution in this situation. As an immigration practitioner, we come to the immigration court every day. I represent thousands of applicants. I would say, if not, maybe 90% of the underlying facts for the application of asylum, withholding or removal, and protection under convention against torture are the same. If you try to distinguish the standard of review for different reliefs, it's possible that the case comes to your court and you find, based on a de novo review of the probability of torture, you will rule in favor or not in favor of the petitioner. For withholding or removal, withholding or removal is another usual judge. Probability of torture, the standard of proof is the same as the CAC. So, you cannot distinguish CAC from withholding or removal. Withholding or removal is a clear and well-known standard of review. But, if the board is allowed to have a de novo review for the asylum application for well-found fear of persecution, it will come up with some funny decisions on every day, Judge. So, as a petitioner, I see the immigration judge applying the same kind of reasoning analysis to all different reliefs. And even they termed as a clear probability or reasonable possibility. These are two terms of art, as my law profession told me. Clear probability is 50% chance of outcome. Reasonable possibility is 10%. That's the difference for most of the petitioners. The BIA has assumed all along that it could reassess evidence as to likelihood of torture, as to well-founded fear. And that this judgmental component is something that is reserved to them under their regulations and as a matter of what they do. Do you think Kaplan was wrongly decided? No, definitely not. Kaplan is the best law that comes out from this court for a long time. Why am I not surprised? For the immigration petitioner. Any better over the... Okay. I think I'll ask your colleague the same thing. Amazingly, we'll probably get a different answer. So, bear in mind that if the court comes out with a different decision in this case, and the legal consequence for the immigration judges, for the immigration courts around the country, they will be confused. If other circuit courts follow suit, and I don't know how we prepare our clients, prepare the asylum applicants, and the judge will be confused. Can you speak for a moment about how your client was prejudiced by the BIA taking administrative notice of the 2005 country report and the 2005 asylum report? What's the practical prejudice for their having done that? The practical prejudice is by taking administrative notice of the report without pointing to any specific factual basis of the case and applying the facts in the report to the individual facts of the case and then make a decision based on that. But just using some kind of template language, basically. The board here is like boilerplate language. From the matter of JWS or JHS, they basically pick out a few phases from the sentence from the two decisions and then use them to deny the application of the applicant or petitioner in this case without pointing to any facts in the case at all. This is clearly prejudiced to the petitioner in this case. Also, the board basically replaces its own fact-finding of the IJs in this case. Like the hearing have never done before. There's no trial in this case. And the board, if allowed to do that, the board will become the adjudicating bodies. And this is clearly in violation of the 2002 regulations. Mr. Wong, you mentioned JHS in your answer just then. And if I understand that decision from the board correctly, that sets up a three-part test. Yes. Applicable to cases like this where there's this potential for sterilization that's being asserted as the foundation of the persecution claim. First let me ask, do you concede that China does not have a policy requiring sterilization of citizens who return to the mainland having given birth to two children abroad? This is a hypothetical question here, Judge, because this is not the facts of this case. Well, the facts of this case are, if I understand JHS right, you've got a three-part test which requires you to identify at the very first step a policy that would require your client to undergo a sterilization procedure. That's the very first step you have to meet, right? Yes. So my question to you is, what's the policy that would require your client to undergo sterilization? Is there such a policy? Because if there isn't, is that the case? The punishment element of the coercive birth control policy, in a way, may give rise to a 10% chance of persecution for my client in this case. Whether sterilization or place in detention or other types of punishments, that's the part of the coercive element of this birth control policy of China. To get to that, Mr. Wong, you're assuming, your argument is assuming that there is a policy, right? And I guess I'm trying to get you to identify the foundation for saying there is a policy that would require your client to undergo sterilization if returning. There's a policy of the Chinese government of punishing birth control violators. People who are coming from overseas. I don't see any difference between people coming from overseas or whether they live in China as long as they are Chinese nationals and citizens. But the children are not Chinese citizens, right? In this particular case, that's why the board warmly supplied the NOFA review for this case. For this particular case, the facts indicate the applicant, the petitioner, will be punished based on her violations of the birth control regulation. Not exactly because she has two children. She was pregnant when she came out from China because she became pregnant when she was not supposed to be. And she fed the country, avoiding the enforcement of the birth control policy. And that's a coercive element. A report even included in the 2000 country report still reported that the coercive element itself will cause harm to the petitioner. And whether it's sterilization or other kinds of punishment, actually this is not what the IJ found. The IJ did not find out that the applicant will be sterilized, forcibly returned to China. The IJ did not make a decision like that. The IJ believed whatever punishment the applicant will receive upon return to China is a form of persecution. And that's a 10% well-found fear of persecution in her case. And the board's decision completely, I would say, not only misapplied the standard, but misapplied the facts itself. So this case is a very clear case, and I wish the court could... This is a compelling case. I think it compels the grant of asylum. It compels the IJ decision to be sustained instead of remanded. Thanks. Thank you. We'll hear from you on... May it please the court, Eric Marsteller for the Attorney General. I'd like to begin by addressing Judge Jordan's question from the earlier argument regarding the analytical framework. And I think you actually described it very accurately and correctly in terms of how the government perceives it. The question of subjective genuineness is the type of fact-finding that is reviewed under the clearly erroneous standard. But the type of... Applying the well-founded fear standard to the facts of the case is the type of question that is reviewed under the de novo standard by the board. Well, then to answer the question that Judge Rendell put, which is... Well, I actually don't want to speak for... What makes the objective piece of that a legal standard? If I understood the line of questioning, it was... If Kaplan sets a framework, it would be torture is akin to persecution as a legal standard, but that the possibility of future events is akin to the fear well-founded, including the objective component. Is that an accurate take on how Kaplan would overlay on this, or is it different? It gets complicated, Your Honor. First, I want to make a point that I think the vocabulary we're using when we're talking about the board's standard of review, even though it might use the same terminology, the words have different meanings than when we're talking about this court's standard of review. So what might be... So in this court, a well-founded fear is considered a fact reviewed under the substantial evidence standard. However, the source of that standard comes from the statute in Supreme Court decisions that are different from the source of the standard of the scope of review in this decision. Here it comes from the Attorney General's 2002 regulations, which are based on the Attorney General's policy objectives to try to improve the efficiency of the board and also to ensure that the board can still have the authority to have cases with similar facts reach the same conclusion. So what I'm referring to as facts is facts before the board, or facts and legal questions. Those are terms I want to...unless I use it otherwise, I reserve that to how it applies to the board. So answering your question about Convention Against Torture versus the well-founded fear. It is, we believe...first off, Kaplan does not...we don't think it directly controls this case. But more importantly, the decision in Kaplan said that the board can't review de novo the immigration judge's prediction of future events. And though we've sought re-hearing in Kaplan where the government is not challenging that portion of the court's decision. The basis of our petition for panel re-hearing in Kaplan is that the court failed to recognize that the clear probability standard is still a standard that's different from the prediction of future events. And in the CAT context, it gets a little more confusing because the clear probability standard is more likely than not. So the likelihood of future events is fairly closely tied to the standard itself. And the well-founded fear standard, we think, is somewhat different in that, as Judge Jordan notes, there's a requirement of subjective genuineness and objective reasonableness. And there's no specific standard for what objective reasonableness is. And we believe that that requires the board to apply the well-founded fear standard to the facts of the case to determine whether the standard has been met. But underpinning both is an assessment of likelihood, risk of sterilization here, risk of sterilization. Although in this case, a close look at the immigration judge's decision, the immigration judge didn't base his decision entirely on risk of sterilization. It was some sort of ambiguous mixture of risk of sterilization plus risk of economic harm or a high economic penalty. So it's not just risk of sterilization in this case. He just said somehow— Well, it's well-founded fear of, and then the persecution element is the fine or the sterilization. So, yeah, you're right. That's too narrow on my part. Didn't we in Kaplan, though—until we decided Kaplan, it would have been viewed as the law that the BIA could make a different judgment than the IJ as to the likelihood of torture. And that that was something that under regulations was deemed to be reserved to the BIA, correct? That's correct. So that's really not that different from this situation in terms of, you know, the argument as to deference and the IJ being in a certain position and the BIA being in a certain position. I mean, in Kaplan, we already disregarded or rejected the argument that the BIA ought to be able to kind of re-weigh this and make a judgment. And, again, I mean, obviously we think Kaplan is reserved to the CAT context. But to answer your question, the evidence regarding CAT is somewhat different. The supplemental information, the Attorney General's comments about the standard of review, are somewhat different in the CAT context than in the well-founded fear context. Here, the supplemental information explicitly stated that the well-founded fear should be reviewed for de novo. There was no such mention of what the standard should be in the context of a CAT clear probability analysis. And your point is, as strictly a matter of power, the Attorney General has the power to set the regulations about how the BIA will review an IJ. And if they wanted to set the regs in a way that said there's no deference ever, it could do that. If they want to set it in a way that says it's de novo as to a piece, they can do that. It's their call. That's correct. But under CAT, there was a provision saying that this was a judgment of the Board. Wasn't there? It was, I'm trying to recall. I know there was something having to do with that this is a matter of judgment of the Board for it to, whether they use the word de novo or not. I can't recall specifically what the supplemental information said. I can know that the supplemental information specifically in the asylum context said the application of the well-founded fear standard and the burden is reviewed de novo. And I don't think there was similar language with the CAT context. I think if the, I mean, obviously, we would be in a better position if Kaplan was not there. And I think the court, if Kaplan had not been decided in a way, the analysis here would be different. But I think it's important to note that there are substantial differences between withholding and CAT. And we think that the supplemental information provided by the Attorney General is sufficient to show that the Board's interpretation is not plainly erroneous or inconsistent with the regulations, which is the standard. Why are you worse off with Kaplan if Kaplan stands simply for the point that you've got to have facts before you have law? I mean, I must not be getting the full range of Kaplan's implications. But as I read and reread that case, it seemed to me that the court was saying, hey, you really have to have the facts in hand before you start applying the legal standard. And in this instance, the facts, i.e., probability of a future event, is a factual statement. It's a factual issue. And you don't make it a factual issue by calling it a legal issue. I mean, you don't change it by changing its name. If you have a regulation that says facts are for the IJ and legal application is for the BIA, that's fine. But you can't alter that system by starting to call facts law. And the probability of a future event is, across all adjudicated bodies and all areas of law, a question of fact. That's how I read Kaplan. Now, if that's all Kaplan says, why is that problematic for the government? Maybe I overstated our position. I think the confusion, for me anyway, with Kaplan is that the prediction of future events is also the same line as the standard, where it's clear probability, is it more likely or not, and that's where the standard line is as well. Here, the standard line is not a clear line in the sand, saying anything over this is well-founded fear, anything short of it is not. Supreme Court has said it can be as low as 10% chance, but there's no specific standard requirement. It's more of a sufficiency of the evidence. That's correct. And whether, right, that's correct. Yeah. So the CAT standard and the more likely than not standard, that more than 50% happen to coincide. And if the government doesn't like that, I guess they can change the standard review, but it doesn't make a factual determination into a legal one, right? That's correct, Your Honor. Any more than it would in this instance. But it does make, and I must say when Kaplan circulated, I had misgivings about it because it seems to me that the regulations anticipate that the BIA should be in a position to look at what was before the IJ and what the IJ credited, and not overturn what was credited unless it's clearly erroneous, but be able to say, you know, I don't think that does add up to the probability. Just like here you can say, well, I don't think that adds up to a well-founded fear. So it seems to me that the scheme, the administrative scheme, was that the BIA should be able to second-guess the IJ as to the predictability because it sees these things all the time. And the IJ does too. The IJ finds facts. But in terms of the overall picture, which would then say that this would follow form, that you can, you know, not really. You know, I agree you've got those 10 points. But whether they add up to a well-founded fear, not so sure. So I think, I guess I'm just arguing the point that Kaplan does limit the power of the BIA to second-guess the IJ's determination of likelihood. And we don't think it should be read to that degree. Which may be why you're not arguing because we will make it more specific and make it so certain it's going to hurt you. What I will point out is going back to the supplemental information that was provided with the 2002 regs. The regulations also point out, and this is also discussed by the board in its decision in matter of HLH, which was in the 28J letter, is the attorney general believes that the standard of review for the board to the immigration judge gives the board the authority to create, to resolve instances where differing decisions may be reached based on essentially identical facts. And what we have, if the clearly erroneous standard was the appropriate one for the well-founded fear analysis, the board loses the ability to do that. This court issued a decision in 2008 called U, which has facts remarkably similar to this, where the board relied on matter of CC and cited the 2005 country report information in determining that the board's determination, discounting the weight given to the aired affidavit, and giving more weight to the State Department report. All those things match up, and this court found that the board's decision was supported by substantial evidence. And that case was different because the IJ had also denied, and then the board had denied. What the board did here was correct, in its eyes, corrected the IJ's decision to make these facts of somebody who has a child born in the U.S. and fears going back to China, Fujian province to face sterilization, make these facts have consistent outcomes in all cases. The board did it by taking administrative notice of a 2005 country report and asylum report with no notice to the petitioner at all, and made those country reports, in fact, dispositive, didn't it? And that's exactly what it did in U, where the court found the board's decision supported it. Well, but that was an affirmance. Right. Of the IJ by the BIA. But the board in its decision still relied on the 2005. I see your point. I see your point. So are you suggesting that it's consistent with due process for extra record evidence to be the dispositive point in a case when there's no chance for response by the petitioner? Because if that is your position, and it seems to be, that strikes me as extraordinary. Well, I'd like to make four points on that, if I have time. I'll be quick. First, it wasn't solely dispositive. The board in its decision here relied on why it gave less weight to the aired affidavit. And that alone, and even the board's decision, it says in CC, it discussed the State Department report information and the aired affidavit and why it gave more weight to the State Department report. And then it gave in its decision in this case, for example, the 2005 information says this. When it's weighing the evidence, it's weighing the 2005 evidence, not the 2004 evidence that everybody had been arguing about before the IHA, right? It specifically refers to that. The board doesn't specifically refer to what it's weighing. But in CC, it weighed the 2004 and 2005 information. Here, the board cites 2005 information, which I also want to point out quickly, is that most of the information, or at least two of the main factual claims it makes in that paragraph in the board's decision, are verbatim the same as in the 2004 profile. But the key issue is the due process issue, isn't it? And the fact that they didn't have the opportunity. Well, first off, there's no prejudice. Because first off, they never argued prejudice in their brief to this court. And they haven't shown, as is their burden, what is different in the 2005 compared to the 2004 and why it mattered. And they have the burden to show prejudice. Well, the other problem is the BIA's opinion reads like likelihood. It doesn't say, oh, and after we discount these two things, we find there cannot have been an objectively reasonable well-founded fear. It treats these two items of evidence as saying, we conclude today that this isn't going to happen. That's not the test. The test was their objectively reasonable well-founded fear, giving all the things. The IJ had lots of reasoning that gave rise to the fact that she was a fugitive. And they said they were going to get her and the excessive fines. I mean, if you're going to re-weigh, and you say you're going to re-weigh, then re-weigh. Don't just take two things out and say, one thing that they never told her about and the other, the Aaron's affidavit. It just doesn't seem like the BIA did its job, even if it was permitted to discount these things. Can I ask another question? Of course. You've said there's no prejudice. Should we presume that people tailor their arguments to the evidence? Is that a fair presumption? I would think so, Your Honor, yes. Okay. So that if something comes in from left field that nobody's dealt with, isn't that sort of presumptively prejudicial? You seem to be arguing that we should presume that there's no harm when something comes in from left field. Is it fair for us to say, yes, you tailored everything to the evidence that was in front of the IJ, but it's okay for the Board to pull something in that nobody has talked about because you haven't specifically identified the ways in which you were surprised? That seems, have I got your argument right? I mean, I believe so. I think the burden of proof in establishing a due process violation is on the person alleging the violation to establish prejudice. And that is something that could have done before this Court. It didn't matter that they didn't see it before the Board. They've had the time since the Board issued its decision to explain exactly what the prejudice would be, and they didn't meet that burden. Thank you, Your Honors. Thank you. Your fellow, Mr. Wong. The use of the 2005 report definitely prejudiced the applicant. You're going to have to say, Mr. Wong, where you made that argument, because their specific argument is you didn't brief it, so you've lost it. So point us to where you have noted prejudice. We did brief it. And also, we briefed it that we were saying even the Board could take administrative notice of the update background country condition. The 2005 report actually report more or less the same country condition like the 2002 report. And obviously, this is a due process issue that the- Let me press you for a minute, Mr. Wong. We did not concede this point, Judge. I understand you're not conceding that you didn't say there was prejudice. I'm trying to get you to respond to his specific argument is if you want to make a due process argument based on the 2005 report, you've got to tell the Court of Appeals what was different in 2005, how the consideration of that resulted in something practically different than was before the IJ in the 2004 report. I understand that to be Mr. Marsteller's argument. So can you point to us in your briefing or otherwise where you said, hey, this is how we're surprised. This is how it hurt us. Our basic argument is the Board was wrong in picking out any specific facts. They failed for their own decision without even mentioning any individual facts or the 2000 country report. The judge relied upon in making the determination that there's no well-found fear of persecution. That we come back to the same issue, the judge should not be allowed to apply a de novo review in this situation. Even this is concerned with asylum and well-founded fear. The Court could always apply the 2010 or 2011 country report any time they want. But they have to basically rely on the individual facts of the case, whether there's sufficient evidence in the record to support the claims of the advocate. That's what the Board is supposed to do, not to bring out any year's country report and say, oh, this according to this year's country report categorically. And they did not even point to any specific facts or any other facts.